UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBIN LEA JESS, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 2:16-cv-01476-RSM-KLS <br><br> REPORT AND RECOMMENDATION <br><br> Noted for May 5, 2017 |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income (SSI) benefits. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the undersigned recommends that the Court affirm defendant's decision to deny benefits.

FACTUAL AND PROCEDURAL HISTORY

On December 11, 2014, plaintiff filed an application for SSI benefits. Dkt. 10, Administrative Record (AR) 19. She alleges she became disabled beginning December 11, 2014. *Id.* Plaintiff's application was denied on initial administrative review and on reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ), at which plaintiff appeared and testified as did a vocational expert. AR 91-140.

In a written decision dated June 22, 2016, the ALJ found that plaintiff could perform both her past relevant work and other jobs existing in significant numbers in the national economy,

REPORT AND RECOMMENDATION - 1

and therefore that she was not disabled. AR 19-38. Plaintiff's request for review of that decision was denied by the Appeals Council on September 8, 2016, making it the final decision of the Commissioner, which plaintiff then appealed in a complaint filed with this Court on September 23, 2016. AR 1, Dkt. 3, 20 C.F.R. § 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred:

(1) in evaluating the medical opinion evidence from Aaron Russell, Psy.D., Ellen Kim, M.D., ;

(2) in assessing plaintiff's credibility;

(3) in evaluating the lay witness evidence in the record;

(4) in assessing plaintiff's residual functional capacity (RFC);

(5) in finding plaintiff could perform her past relevant work; and

(6) in finding plaintiff could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged, and therefore recommends that the Court affirm the decision to deny benefits.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of*

*Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I. <u>The ALJ's Evaluation of the Medical Opinion Evidence</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

"must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute

REPORT AND RECOMMENDATION - 4

substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

   A.   Dr. Russell

The ALJ stated he was giving "little weight" to the opinion of examining psychologist, Aaron Russell, Psy.D.:

> who indicated various restrictions, including a "poor" ability to maintain attention and concentration and a "severely" impaired ability to maintain regular attendance. He also indicated that the claimant was "limited" in other areas. However, Dr. Russell's opinion is not consistent with his findings. For instance, inconsistent with his opinion regarding concentration, he made generally normal findings regarding concentration, as discussed above. The opinion is also generally inconsistent with the clamant [sic] reported activities and with the investigator's observations in the February [Cooperative Disability Investigations Unit (CDIU)] report.
>
> Furthermore, Dr. Russell bases much of his opinion on the claimant's report of physical symptoms. He stated that "the claimant's ability to complete a normal workday and workweek . . . is limited from a psychiatric standpoint; however, the claimant's apparent lack of physical stamina, medical conditions and physical pain may be more likely to have a greater adverse impact upon her workday functioning ability". A psychologist is not a medical doctor and is therefore not qualified to assess the medical as opposed to the psychological aspects of plaintiff's condition.

AR 27-28 (internal citations omitted). Plaintiff argues the ALJ's stated reasons for rejecting Dr. Russell's opinion are improper. The Court disagrees. First, as the ALJ pointed out, Dr. Russell's own objective findings are inconsistent with the significant mental functional limitations he assessed. For example, the results of the mental status examination Dr. Russell performed were largely unremarkable. AR 1097-98. The ALJ did not err in relying on this reason for rejecting Dr. Russell's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between a medical opinion source's functional assessment and that source's clinical notes and recorded observations regarding a claimant's capabilities constitutes "a clear and convincing

REPORT AND RECOMMENDATION - 5

reason for not relying" on that assessment); *Batson*, 359 F.3d at 1195 (an ALJ need not accept a physician's opinion if it is inadequately supported by clinical findings).

Second, as the ALJ also pointed out, plaintiff's reported activities likewise are not consistent with the nature and severity of the limitations Dr. Russell assessed. Again, for example, plaintiff told Dr. Russell that on a typical day she "crochet[s] afghans for disabled vets" and "[m]ay paint or write children's stories periodically." AR 1096. She also "described tending to her four pet snakes," at least one of which as discussed below is of significant size *Id.* Although there are other reports of plaintiff engaging in somewhat less strenuous activities of daily living (*see, e.g.,* AR 786, 1096), given that the ALJ has the sole duty to resolve conflicts and ambiguities in the evidence in the record, he did not err in relying in part on the greater functional capability suggested by the above activities. *Morgan*, 169 F.3d at 601-02 (upholding the ALJ's rejection of a physician's conclusion concerning marked limitations in part on the basis that other evidence of the claimant's ability to function, including reported activities of daily living, contradicted that conclusion).

As for the CDIU investigator's observations, the ALJ properly relied on those as well to reject Dr. Russell's opinion:

> On February 17, 2016, the CDIU investigator observed the claimant exit her apartment building carrying a large shopping bag and a large handbag from her right shoulder. She walked down the street with normal gait and pace. The investigator called the claimant over, and engaged in a conversation with her. During the conversation, the claimant never put down the two large bags. The investigator made no mention of the claimant using a cane. The investigator also indicated that the claimant had no problem using her hands, and she exhibited no guarding, abnormal posture, or other obvious pain behaviors.
>
> The claimant reported extensive daily activities to the investigator (who identified himself as a police officer) that are inconsistent with her allegations. For instance, she stated that lives with her three teenage children in her apartment. She takes care of all the housecleaning, laundry, and shopping for her family. She shopped mostly at Safeway and Walmart, and she rides the

REPORT AND RECOMMENDATION - 6

> bus to get around. She manages her finances independently, maintains a Facebook page, and shops on-line.
>
> She takes care of animal [sic] in her home, including an eight-foot boa constrictor, a python, two corn snakes. She stated that she carries the boa constrictor frequently. She buys five-pound rabbits to feed to boa constrictor; the food weighs much more than the claimant's alleged 2 pound lifting limitation.
>
> She told the investigator that she takes care of her one and a half year old granddaughter on Mondays, Thursdays, and Fridays, for twelve hours each day from 5:30[]am to 5:30[]pm. She also has the granddaughter on some Saturdays. She has been caring for her granddaughter since she was three months old. The claimant also stated that she was looking for work online in Dutch Harbor.
>
> The claimant also told the investigator that one of her children has special needs and that she homeschools him; this includes taking him to the library every Wednesday to meet a tutor. It is unclear if the claimant home schools her son full-time, because she also mentioned that he takes special education classes. Regardless, this and her other statements still indicate that she independently provides for her family, which is inconsistent with the testimony that she has needs assistance to perform various activities.

AR 32-33 (internal citations and footnote omitted); *see also* AR 1135-41. Plaintiff argues the ALJ's reliance on the CDIU investigator's observations was improper, because that investigator is not a medical professional. But as indicated above, the investigator did not offer any medical diagnoses or opinions or clinical findings. Rather, he merely relayed what he observed and what plaintiff herself told him. Because as noted above it is not improper for an ALJ to rely on other evidence in the record – including evidence of a claimant's activities – in discounting a medical source opinion, here too the ALJ did not err. *Morgan*, 169 F.3d at 601-02.

Lastly, the ALJ properly pointed to Dr. Russell's statement concerning the impact of plaintiff's physical impairments on her ability to function. AR 28. Plaintiff does not challenge this basis for rejecting Dr. Russell's opinion. Unlike a psychiatrist, Dr. Russell does not have the medical qualifications to provide such an opinion. *See Brosnahan v. Barnhart*, 336 F.3d 671, 676

REPORT AND RECOMMENDATION - 7

(8th Cir. 2003) (upholding the rejection of a psychologist's opinion in part "because it was based partly on consideration of physical impairments, an area outside [the psychologist's] expertise"); *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (pointing out that the opinion of the claimant's treating psychologist was based on the claimant's "underlying *physical* conditions," which the psychologist "was not qualified to diagnose") (emphasis in the original). The ALJ thus properly rejected Dr. Russell's opinion on this basis as well.

B.     Dr. Kim

Plaintiff also challenges the ALJ's following findings concerning the opinion evidence from Ellen Kim, M.D.:

> I give little weight to the medical opinions of treating provider Dr. Kim, who provided multiple opinions that indicate rather profound restrictions due to various impairments. Although treating provider opinions are usually afforded more weight, I give little weight to her opinions because (1) the opinions lack objective findings that are consistent with the opinions; (2) they were not consistent with her own treatment notes; (3) they were not consistent with findings in the overall record; (4) they were inconsistent with the claimant's daily activities; (5) they were inconsistent with the examination by Dr. [Deven] Karvelas[;] and (6) they were inconsistent with the observations contained in the CDIU report and video.

AR 34. More specifically, the ALJ found:

> In July 2013 and February 2014, Dr. Kim stated that the claimant could not work in any capacity due to degenerative disk disease, hip pain, hepatitis C, hand neuropathy, depression, and daily panic attacks. However, the statements do not reflect any specific vocational restrictions. Moreover, a statement that a claimant is "disabled" or "cannot work" is not a medical opinion. Rather, it is a legal conclusion that is reserved to the Commissioner. Dr. Kim also did conduct an evaluation with objective findings consistent with such limitations. Nor are the opinions consistent with the clinical findings in the overall record, as discussed above. Furthermore, most of the symptoms on which Dr. Kim predicates the limitations (hip pain, hepatitis C, hand neuropathy, depression, and panic attacks) are not associated with medically determinable impairments or severe impairments.
>
> For the same reasons, I give little weight to the various [state agency] functional capacity forms submitted by Dr. Kim, all which indicate that the

REPORT AND RECOMMENDATION - 8

claimant was "severely limited" or limited to less than sedentary work; would have notable manipulative restrictions and other limitations; and would miss up [sic] work up to four times each week. She submitted the opinions in February 2014, May 2015[,] and September 2015. She did not provide a full evaluation with sufficient objective findings with each opinion consistent with such limitations. For instance, in the examination regarding the February 2014 opinion, Dr. Kim noted only minimal, vague findings: tenderness in the neck and back, and limited range of motion. She was unable to review current imaging because it was still pending. She also noted that the claimant "uses a cane and walker". Yet, it appears that this was simply the claimant's report because it is unlikely she presented using a walker and cane at the same time. Regarding the May and September 2015 opinions, the corresponding examinations reflect no clinical abnormalities at all. The opinions from Dr. Kim are also inconsistent with her other treatment notes; with the treatment notes from pain management providers; with the findings and opinion of consultative examiner Dr. Kervalas; and with the CDIU report, all of which are discussed above.

Furthermore, the reports by Dr. Kim are not longitudinally consistent. Specifically, in February 2014, Dr. Kim opines the claimant is unable to lift at least 2 pounds or unable to stand or walk. In May 2015, Dr. Kim implicitly opined improvement in that the claimant could occasionally lift less than 10 pounds. She also indicated improvement in that the claimant could in fact stand and or walk less than 20 minutes. In September 2015, the ability to stand or walk increased to less than ½ hour but lifting and carrying decreased to less than 5 pounds. Yet, as discussed throughout this decision, there was little to no objective change in the claimant's condition contained in the longitudinal record, including Dr. Kim's treatment notes. To the contrary, in March 2015, during the period spanned by these opinions, Dr. Karvelas observed the claimant had no difficulty removing and replacing her shoes and socks independently. She had normal station and gait, She was able to walk on heels and toes and was able to perform a tandem gait. She had good balance on single-legged stance bilaterally, and was able to squat.

AR 34-35 (internal citations omitted). The Court finds this detailed analysis and rejection of Dr. Kim's opinions to be supported by substantial evidence and free of error.

Plaintiff first argues the ALJ erred in relying on the CDIU investigator's observations, because that investigator is not a medical professional. But as previously discussed, this is not a valid basis upon which to question the ALJ's reliance thereon, given that the investigator was not acting in the capacity of a medical professional, and that the ALJ may properly rely on other

REPORT AND RECOMMENDATION - 9

evidence of plaintiff's ability to function to reject medical opinion evidence, including evidence of her reported daily activities. Nor does the Court find persuasive plaintiff's complaints that the investigator had no way of knowing the exact weight of the bags she carried. Particularly in light of the fact that the investigator was a law enforcement officer, it was entirely reasonable for the ALJ to give credence to the investigator's ability to observe plaintiff. Further, those observations as also discussed above, show plaintiff to be far more physically and mentally capable than Dr. Kim's opinions indicate. *See* AR 806-07, 944-45, 1135-41.

Also without merit is plaintiff's assertion that objective clinical findings contained both in Dr. Kim's own treatment notes and elsewhere in the record support her opinions. As the ALJ pointed out, Dr. Kim's treatment notes and the physical assessment forms she completed for the most part are devoid of significant objective clinical findings, other than the existence of some pain and tenderness and reduced range of motion. AR 777, 801, 806-07, 944-45, 1107, 1172, 1202. Other treatment and physical examination records are equally unsupportive. AR 663, 787-88, 791, 795, 857, 899, 903, 1102-03, 1131, 1177. Electrodiagnostic studies also largely reveal mild to moderate impairment. *See* AR 781, 783, 1108, 1121, 1168, 1175.

Finally, plaintiff argues it was improper for the ALJ to reject Dr. Kim's opinions based on the findings of Dr. Karvelas. Specifically, plaintiff asserts Dr. Karvelas examined her before the most recent imaging studies showing deterioration in her knee joints were obtained. But as just discussed, those studies showed at most mild to moderate impairment. In addition, the mere fact that Dr. Karvelas examined plaintiff one time is not a sufficient basis to call into question the ALJ's reliance thereon, particularly in light of the lack of objective findings overall in the record that support the functional limitations in Dr. Kim's opinions, including those of Dr. Kim herself. As such, the ALJ did not err in rejecting those opinions.

REPORT AND RECOMMENDATION - 10

II. <u>The ALJ's Assessment of Plaintiff's Credibility</u>

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

REPORT AND RECOMMENDATION - 11

The ALJ offered a number of reasons for finding plaintiff to be not entirely credible concerning her testimony and statements. First, the ALJ found the objective medical evidence was inconsistent with plaintiff's allegations of disabling symptoms and limitations. AR 30-32. This was a valid basis for discounting plaintiff's credibility. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff argues the ALJ erred here by failing to cite to specific findings that are not consistent with her testimony. To the contrary, the ALJ provided a very detailed summary of the findings he found to be inconsistent therewith. *See* AR 30-32.

The ALJ also found plaintiff's asthma appeared to be generally controlled with treatment. AR 31. This too was a valid basis for finding plaintiff to be less than fully credible, a finding plaintiff does not challenge. *Morgan*, 169 F.3d at 599 (an ALJ may discount a claimant's testimony based on medical improvement); *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). In addition, the ALJ discounted plaintiff's credibility in light of the observations of the CDIU investigator outlined above concerning plaintiff's demonstrated functional capabilities and reported activities of daily living. AR 32-33. A claimant's credibility may be discounted if the claimant can "spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting," or if the claimant's daily activities otherwise "contradict his other testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen*, 80 F.3d at 1284 n.7.

In contesting this basis for discounting her credibility, plaintiff reiterates her argument that the ALJ erred in relying on those observations, because the investigator was not a medical professional. For the reasons previously discussed, the Court finds this argument to be without

REPORT AND RECOMMENDATION - 12

merit. Further, as also detailed above, the activities plaintiff reported to the CDIU investigator clearly show an ability on plaintiff's part to spend a substantial part of her day performing both household chores and other activities transferrable to a work setting.

Lastly, the ALJ discounted plaintiff's credibility because as a witness at the hearing she "came across as evasive and trustworthy," and "appeared to weight her responses not for their truthfulness but to assess whether they would damage her claim." AR 33. Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002) (an ALJ may rely on a claimant's demeanor at the hearing as a basis for discrediting his or her testimony); *see also Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). This was a valid basis for discounting plaintiff's credibility as well, which once more plaintiff has not challenged. Accordingly, the Court finds ALJ did not err in discounting plaintiff's credibility.

III. The ALJ's Evaluation of the Lay Witness Evidence

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

In terms of the lay witness evidence in the record, the ALJ stated he considered the statement of plaintiff's daughter, but rejected that statement noting it "generally reflects the same allegations made by [plaintiff], allegations that are generally not consistent for the reasons

REPORT AND RECOMMENDATION - 13

discussed throughout this decision. AR 35. Plaintiff asserts that because the reasons the ALJ gave for not finding her to be credible were improper, the ALJ's reliance on those same reasons here also was error. But since as discussed above those reasons were all proper, the ALJ did not him in relying on them to reject the lay witness evidence as well.

IV. The ALJ's Findings at Steps Four and Five

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. SSR 96-8p, 1996 WL 374184, at *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational

REPORT AND RECOMMENDATION - 14

expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

The ALJ in this case found plaintiff had the RFC to perform a modified range of medium work. AR 29. Then, based on that RFC and the testimony of the vocational expert, at step four of the sequential evaluation process the ALJ found that plaintiff could perform her past relevant work, and in the alternative at step five that she could perform other jobs existing in significant numbers in the national economy. AR 35-37. Plaintiff argues that because the ALJ erred in evaluating the medical opinion evidence and in assessing her RFC, neither the step four nor the step five findings are supported by substantial evidence. As discussed above, though, the ALJ did not so err, and therefore those findings stand. While plaintiff does appear to be correct that the ALJ's reliance on the vocational expert testimony to find she could perform her past relevant work was erroneous given the limitation on climbing contained in the RFC (*see* AR 29, 36, 127-29), that still leaves the other jobs the vocational expert identified at step five. Accordingly, the ALJ did not err in finding plaintiff to be not disabled at that step.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ properly determined plaintiff to be not disabled, and therefore that it affirm defendant's

REPORT AND RECOMMENDATION - 15

decision to deny benefits.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (Fed. R. Civ. P.) 72(b); *see also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **May 5, 2017**, as noted in the caption.

DATED this 17th day of April, 2017.

Karen L. Strombom
United States Magistrate Judge